**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDWARD HAYS,** | ) | **Case No. 1:09 CV 2840** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **AARON BOLTON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court is the Motion for Summary Judgment filed by Defendants Aaron Bolton, Richard Grassnig, Vermilion Police Department, Chief Robert Kish, and the City of Vermilion (collectively "Defendants"). For the reasons discussed, *infra*, Defendants' Motion (**Doc #: 15**) is hereby **GRANTED**.

**I.**

On the night of December 7, 2008, 18 year-old Heather Hays ("Heather") announced she was moving out of her parents' house. (Doc #:14-22 at 39.) An argument subsequently ensued causing Heather's father Plaintiff Edward Hays ("Hays" or "Plaintiff"), to lead Heather down a flight of stairs and outside of the house by putting his hands on her shoulders (Doc #:14-24 at 131.) Hays locked the door behind him. (*Id*. at 140-41.) In the process of being taken down the stairs, Heather's shoes came off. (Doc #:14-22 at 42.) The temperature that night was estimated to be around nineteen degrees. (Doc #: 14-2 at 4.)

Heather called the Vermillion Police Department and told the police dispatcher

that her dad "threw me out of the house without any shoes and ... I need a police officer to get my stuff." (Doc #:14-9 at 2-3.) Defendant Police Officers Aaron Bolton and Richard Grassnig were then called and informed that the situation involved "father daughter domestic ... daughter is 18, she's locked out of house at this time." (*Id*. at 3-4.)

Officers Bolton and Grassnig arrived at the Hays home, where Heather informed them that she needed to retrieve some items from the house. (Doc #:14-22 at 54-55.) The officers, with Heather next to them, rang the doorbell and knocked loudly on the front door of the Hays house. (*Id*. at 56-57.) The officers also checked to see if any windows were unlocked, (*Id*. at 57-58), and asked the dispatcher to call the Hays home. (Doc #:14-10 at 2-3.) Eventually, the garage door opened and Heather and the officers walked into the Hays home. (Doc #:14-22 at 58-61.)

Heather went up a flight of stairs to retrieve her belongings. (*Id*. at 62.) While the officers were at the bottom of the stairs, Edward Hays, who appeared at the top of the stairs, questioned the authority of the police to be in his home. (Doc #:14-17 at 125-128; Doc #:14-24 at 124.) The officers asked Hays to "come on down and talk to us." (Doc #: 14-10 at 14.) Officer Grassnig subsequently went up the stairs and arrested Hays for domestic violence. ((Doc #:14-17 at 125-128; Doc #:14-24 at 124.) A jury later found Hays not guilty of domestic violence. (Doc #:14-12 at 191.)

On December 7, 2009, Hays filed a complaint against Officers Hays and Grassnig, the City of Vermilion, the Vermilion Police Department, and Vermilion Police Chief Kish, alleging a failure to adequately train officers under 42 U.S.C. §1983, malicious prosecution, false arrest, due process violations, and state constitutional violations. (Doc #:1.)

On November 16, 2010, all Defendants filed the instant Motion for Summary Judgment on all claims. (Doc #: 15.) Plaintiff opposed the Motion on December 14, 2010 (Doc #: 17); Defendants filed their reply brief on December 29, 2010. (Doc #: 18.)

**II.**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences drawn therefrom must be viewed in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A. Qualified Immunity for Individual Officers under Federal Law**

Defendants move for summary judgment for Officers Bolton and Grassnig on the ground that they have qualified immunity against all claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the

defendant['s] position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

In assessing qualified immunity, the court, viewing the facts in the light most favorable to the plaintiff, determines whether: (1) the violation of a constitutional right has occurred; and (2) the constitutional right at issue "was clearly established at the time of defendant's alleged misconduct." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004).

Plaintiff alleges that Officers Bolton and Grassnig violated his Fourth Amendment right to be free from unreasonable search and seizures when the officers arrested Hays in his home: (1) without an arrest warrant; (2) without probable cause; (3) without consent to enter Hays' home; and (4) where there were no exigent circumstances.

"A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Probable cause exists if the facts and circumstances known to an officer warrant a prudent man in believing that the offense has been committed." *Id*. (citation omitted).

Officers Bolton and Grassnig had probable cause to believe that Hays had committed the criminal offense of domestic violence. R.C. 2919.25 defines domestic violence as knowingly causing or attempting to cause physical harm to a family member. Heather Hays called the Vermillion police and reported that her dad "just threw me out of the house without any shoes," on a night with temperatures well below freezing, and requested that officers come

-4-

to the scene. (Doc #: 14-9 at 2-3.) Once the officers arrived and commenced their investigation, Heather agreed when she was asked if her father "grab[bed] her," "threw [her] out," and "pulled [her] outside." (Doc #:14-10 at 7-8.) Thus, Heather Hays' representation that she had been grabbed by her father and locked out of the house without her shoes on a frigid night provided the officers probable cause to believe that Edward Hays had attempted to cause physical harm to his daughter. Moreover, the officers provided Hays the chance to explain his side of the story prior to being arrested; however Hays did not come down the stairs to speak with the officers, denying himself the opportunity to rebut the evidence that had been obtained against him. (See Doc #: 14-10 at 14 (prior to arrest officers ask Hays to "come on down and talk to us").)

Even if officers have probable cause to believe an offense has been committed, they cannot arrest a suspect in his home without a warrant, consent to enter the home, or exigent circumstances. *Ingram v. Columbus*, 185 F.3d 579, 587 (6th Cir. 1999). Here, the officers did not have a warrant to arrest Hays. Nor were there exigent circumstances to enter the home, as the officers were already with Heather Hays prior to entering the home, and she was in no danger from her father. Thus, the critical inquiry is whether the officers had consent to enter the Hays home.

Based upon the available evidence, and despite Plaintiff's argument to the contrary, there is no question of fact that Heather Hays provided the officers consent to enter the Hays home. "Magic words" are not required to demonstrate consent; rather the totality of the circumstances, including the tenant's non-verbal actions, should be considered where there is neither verbal assent or dissent. *See United States v. Carter*, 378 F.3d 584, 593 n.2 (6th Cir. 2004) (en banc); *United States v. Beasley*, 199 Fed. App'x 418, 424 (6th Cir. 2006). When

Heather called the Vermillion Police, she stated that she "just need[ed] a police officer to go get her stuff." (Doc #: 14-9 at 3.) The officers walked in with Heather when the garage door to the Hays home opened and Heather entered the home. (Doc #:14-22 at 61-63.) She was aware that the police were entering her house and "thought they would just go into the house" but only became "upset" when "they started arresting [her] father." (*Id.* at 63.) She testified at deposition that she did not "tell [the officers] not to come in the house." (*Id.*) Thus, while Heather did not specifically tell the officers they could enter her home, she called the police to assist in retrieving her belongings from the home, was with the officers the entire time including when they entered the garage and the house, and never objected to their presence. Accordingly, based on Heather's actions, she consented to the officer's entry.[1]

Plaintiff further argues that Heather did not have the authority to provide consent because she had expressed the intent to move out of the Hays home. While Heather may or may not have had the actual authority to give the officers permission to enter the house, Heather had apparent authority to provide consent. *See United States v. Taylor*, 600 F.3d 678, 681 (6th Cir. 2010) (search permitted where officers reasonably believe person consenting to search has authority to do so). She informed the officers that, minutes earlier, her father had thrown her out of the house where her belongings were located. She sought the police's help to retrieve some of

---

[1]Plaintiff's opposition brief attaches, as an exhibit, an affidavit from Heather Hays in which she states that she did not give the officers consent to enter the Hays home. (Doc #: 17-1.) The affidavit is materially contradictory to Heather's deposition testimony, claiming, for example, that she never "told Officers Grassnig or Bolton that my father 'dragged me down the steps'" even though her deposition testimony confirms that she "told the officers [she was] dragged," and that "[w]hen I said dragged, I didn't literally mean dragged." (Doc #: 14-22 at 43-44.) Because "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony," the Court strikes Heather's affidavit. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

those belongings. (Doc #: 14-9 at 3.) When one of the officers said "you live here, if you want to go in and get your stuff," Heather did not state that she didn't live at the house. (Doc: 14-10 at 11.) Based on the totality of these circumstances, the officers reasonably assumed that Heather had the authority to consent to their entry..

Plaintiff contends that even if Heather authorized entry into the house and had the authority to do so, Edward Hays' objection to the police's entry superceded Heather's consent. "[A] physically present co-occupant's stated refusal to permit entry prevails" over permission granted by another co-occupant. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). That is, "police officers are not permitted to balance or weigh one co-tenant's consent against another co-tenant's non-consent; if one occupant objects, the police cannot enter a residence, without a warrant, based on the consent of another occupant." *United States v. Tatman*, No. 09-3117, 2010 WL 3724593, at *6 (6th Cir. Sept. 13, 2010) (summarizing *Randolph* holding). A critical issue is the physical location of the objecting occupant. "[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not involved to take part in the threshold colloquy, loses out." *Randolph*, 547 U.S. at 121. Thus, an occupant who was asleep in his apartment when a co-occupant permitted police to enter and conduct a search, could not suppress the fruits of the search by objecting after the police entered the apartment. *Illinois v. Rodriguez*, 497 U.S. 177, 186-87 (1990); *Randolph*, 547 U.S. at 121 (upholding *Rodriguez* in finding that "it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission

-7-

they had already received.").

The officers did not violate Hays' Fourth Amendment rights by being present in Hays' home against Hays' objection. First, Hays did not object to the police's presence until they "were at the bottom of the steps" inside his home. (Doc #: 14-24 at 123.) Thus, Hays' objection could not override the consent given by his daughter because the police were already lawfully in his home. Second, Hays was already in plain view of the officers when he expressed his objection and when they arrested him. (*See id.* at 123 (stating that he "saw the look of shock on Officer Bolton's face" after Officer Grassnig said he was going to arrest him"). That is, after Hays' objection to the entry, the officers did not conduct a search or seizure of the house, nor did they remain in the house. They left promptly, taking Hays, who had been in plain view, with them. Accordingly, there was no Fourth Amendment violation by the officers in entering Hays' home and arresting him.[2]

**B.  Municipal Liability Under 42 U.S.C. §1983**

Defendants move for summary judgment for the City of Vermillion on the ground that the City does not have a custom or policy that violated Plaintiff's constitutional rights under 42 U.S.C. §1983. "[A] municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). Rather, a

---

[2]Even if the officers violated Hays' Fourth Amendment rights, summary judgment must still be entered in their favor because the constitutional right at issue was not clearly established at the time of the officers' alleged misconduct. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Plaintiff has not cited any caselaw which would have demonstrated to a reasonable officer that conduct such as Officer Grassnig's and Bolton's was unlawful. The officers had probable cause to arrest Edward Hays for domestic violence, they were reasonable in believing that Heather Hays had granted them consent to enter the Hays home, and they were reasonable in believing that Heather Hays' consent permitted them to arrest Edward Hays in his home without a warrant.

municipality will be liable under §1983 only if any injury occurs pursuant to a municipal custom or policy. *Id.* at 694. This requires Plaintiff to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987). A plaintiff may establish municipal liability by showing a policy of inadequate training and supervision, including a policy of tolerating federal rights violations [that] is unwritten but nevertheless entrenched." *Moldowan v. City of Warren*, 578 F.3d 351, 393 (6th Cir. 2009). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Municipal School District*, 455 F.3d 690, 700 (6th Cir. 2006).

Plaintiff alleges that "Defendants Chief Kish, [Vermillion Police Department], and the City of Vermillion failed to adequately train Defendant Officers Bolton and Grassnig regarding the laws ..." and the "lack of adequate training was part of a policy and custom of inadequate training ... and was a proximate cause of the violation of Plaintiff's Constitutional Rights and other damages to Plaintiff." (Doc #:1. at ¶30). However, because there can be no municipal liability under section 1983 for [unconstitutional conduct] when no [constitutional violation] has actually occurred," the City of Vermillion is entitled to summary judgment on Plaintiff's claim. *Cate v. City of Rockwood*, 241 Fed. App'x 231, 236 (6th Cir. 2007) (citing *Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004). Similarly, because no constitutional violation occurred, Chief Kish and the Vermillion Police Department cannot be found liable under §1983.

### C. Malicious Prosecution and False Arrest

Defendants move for summary judgment on Plaintiff's malicious prosecution and false arrest claims on the basis that there was probable cause for Plaintiff's arrest. "In order to maintain a federal malicious prosecution claim, 'it is clear that a plaintiff must show, at a minimum, that there was no probable cause to justify [his] arrest and prosecution.'" *Beckett v. Ford*, 384 Fed. App'x 435, 456 (6th Cir. 2010) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003)). Additionally, "[t]he Ohio law on malicious prosecution 'requires proof of ... lack of probable cause.'" *Briner v. City of Ontario*, 370 Fed. App'x 682, 701 (6th Cir. 2010) (citing *Froehlich v. Ohio Dep't of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007)). Summary judgment must therefore be granted to Defendants on Plaintiff's malicious prosecution claim, whether brought under federal law or state law, because, as discussed *supra*, there is no genuine issue of material fact that the officers had probable cause to arrest Plaintiff.

"A false arrest claim under federal law requires a plaintiff to prove the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted). Under Ohio law, "an arrest based on probable cause is a lawful detention and, thereby, serves to defeat a false arrest/imprisonment claim." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005). Thus, summary judgment must also be granted to Defendants on Plaintiff's false arrest claim because Plaintiff's arrest was based on probable cause.

### D. Due Process Claims

Defendants have also moved for summary judgment on Plaintiff's unspecified due process Fifth and Fourteenth Amendment Claims. (*See* Doc #: 1 at ¶1.) Plaintiff's due process

-10-

claims allege that "[a]lthough Defendants, Bolton and Grassnig, had no probable cause to believe there was any violation of the law by Plaintiff, they transported him to the Vermillion Police Department station house, where they chained him to a pole for over three hours" and that "Bolton and Grassnig ignored their duty to conduct an investigation and failed to interview witnesses present at or outside Plaintiff's home."  (*Id.* at ¶¶20-21.)  Plaintiff failed to address Defendant's motion for summary judgment on the Fourteenth Amendment Claim in his opposition brief.  Accordingly, Plaintiff has conceded this argument and summary judgment is entered in favor of Defendants.

Even if Plaintiff's failure to address Defendants' argument is not viewed as a concession, Defendants are entitled to summary judgment.  The Fifth Amendment is not applicable to Plaintiff's case because it "only prohibits due process violations by the federal government" and there are no federal government agents or entities in this action.  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 648 n.3 (6th Cir. 2007).  Judgment must be entered in favor of Defendants on the Fourteenth Amendment claim "because a plaintiff claiming that his constitutional rights were violated when state officials detained him without probable cause must assert a Fourth Amendment claim" rather than a Fourteenth Amendment claim.  *Jackson v. County of Washtenaw*, 310 Fed. App'x 6, 7 (6th Cir. 2009) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6tg Cir. 2006)).  As Plaintiff alleges that he was arrested without probable cause, in part because the officers did not conduct a sufficient investigation, his Fourteenth Amendment claim must be treated as a Fourth Amendment claim; as discussed *supra*,

Defendants are entitled to judgment on Plaintiff's Fourth Amendment claim.[3]

**E. Ohio Constitutional Claims**

Defendants have moved for summary judgment on Plaintiff's state constitutional claims, which are only referred to once in Plaintiff's complaint. (See Doc #: 1 at ¶ 1 (alleging that Plaintiff was deprived of "his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States and in violation of laws and Constitution of the State of Ohio).) Plaintiff has not opposed Defendants' motion for summary judgment on the state constitutional claims nor has Plaintiff provided any evidence supporting a state constitutional violation. Thus, summary judgment is entered in favor of Defendants with regard to any state constitutional claims asserted.

**III.**

For the reasons discussed, *supra*, Defendants' Motion for Summary Judgment (Doc #: 15) is hereby **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

                                          */s/Dan Aaron Polster   January 7, 2011*
                                          **Dan Aaron Polster**
                                          **United States District Judge**

---

[3]Further, the Fourth Amendment does not require the officers to conduct further investigation once they have probable cause to make a warrantless arrest. *See e.g., Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (wrongful arrest requires showing "that the police lacked probable cause"). The call to the Vermillion police, coupled with Heather's statements at the scene gave the officers probable cause to arrest Hays. In addition, the officers tried to conduct additional investigation by questioning Hays, but he chose not to come down the stairs to speak with the officers.